## KATHARINE S. HOWARD v. SALOME C. HOWARD.

1. UNDER KANSAS STATUTES, *a Trust Resulted.* The defendant had considerable property in the state of Illinois, which she intrusted to her husband for management. The greater part of it was real estate, which was conveyed to him to be held in trust for her. The real estate was subsequently sold, converted into money, and turned over to the defendant as her own. Afterward, they came to Kansas, where the money was invested in real estate by the husband as the agent of the defendant. Although the understanding was that the conveyance was to be made to the defendant, who paid the consideration, the title was taken in the name of the husband, without her consent. *Held,* That under the Kansas statutes a trust resulted in her favor; *held, further,* That as the Illinois lands were sold and the possession of the proceeds was obtained by the defendant, the question of whether the trust in those lands was duly created and was enforceable under the statutes of Illinois has become immaterial.

2. PAROL EVIDENCE—*Contradicting Conveyance.* The facts and circumstances from which the trust resulted were properly shown by

parol proof, notwithstanding it tended to contradict the conveyance wrongfully made to the husband.

3. FINDINGS *Formulated by Counsel.* Findings of fact and conclusions of law were prepared and presented to the court, and after an examination of the same were adopted by the court as its own. *Held,* That the fact that they were formulated by counsel at the request of the court is no ground for criticism or objection.

4. REVIEW — *Practice.* The objections to testimony offered should be distinctly pointed out in order that the court may rule intelligently upon them, and unless this is done they are not entitled to consideration upon a review.

*Error from Atchison District Court.*

THIS was a proceeding to review the rulings of the district court in two cases which were tried together, and which had for their purpose the determination of the rights of the respective parties in a tract of real estate in Atchison county. The case was submitted to the court upon the testimony offered in behalf of the respective parties, and on June 13, 1889, the court announced its decision orally upon the facts and law of the case in open court, which was in favor of Salome C. Howard. As written findings and conclusions were desired, the court requested her attorneys to prepare such findings and conclusions, which was done, and the court adopted those prepared and filed them as its own. The findings of fact and conclusions of law are in words and figures following:

"CONCLUSIONS OF FACT.

"1. That said Katharine S. Howard is the daughter of W. H. M. Howard by intermarriage with her mother, who was divorced in Vermont in 1875, and said plaintiff was 20 years of age in January, 1889, and has always resided without the state of Kansas.

"2. Said Salome C. Howard, defendant, intermarried with said W. H. M. Howard at Beloit, Wis., in 1877, and thereafter they resided at Geneva, Ill., until August, 1881.

"3. Prior to such marriage said Salome C. was a widow, and had derived upward of $50,000 from her first husband's estate, including a mill property at Geneva, Ill., which had been exchanged for some Chicago property on the basis of

$20,000 value at about the time of the great fire. She had become acquainted with said W. H. M. Howard some two years before her marriage to him, and had mortgaged her Chicago property to raise money for an uncle, and this property being unproductive, she had thereby become embarrassed, and, having confidence in Howard, she had deeded the Chicago property to him before her marriage, without other consideration than that he was to manage the same in her interest and realize upon it to the best advantage for her in extricating her affairs from such difficulties. After her marriage she had the Geneva real estate conveyed to Howard upon the same terms, and had allowed him to use and manage her money and other means upon like terms.

"4. Prior to August, 1881, the defendant's said property and means so in the hands of her husband had become greatly reduced and incumbered, and upon the representation of said Howard that he had large means, including estates in England and Ireland, and large personal means in the hands of a trustee in Washington city, and all of which he was unable to use, either principal or interest, for the time being, it was decided that what was left of the Illinois property should be sold out and a trip should be made to Europe to look after his claimed estates there. The Chicago property had been exchanged for Geneva property, and all the real estate was either sold or mortgaged, and about $10,000 in money realized therefrom, together with the proceeds of the sale of said defendant's piano, library, and household furniture, and about $3,000 in money was realized by her upon the final settlement with the heirs of her first husband's estate.

"5. The money so obtained, amounting to between $12,000 and $13,000, was taken into the possession and control of the said defendant, and with these means the said W. H. M. Howard, (not having any means during his said last marriage other than so derived from the defendant,) and she furnishing the means for their expenses on their travels, they went first to New York city, where said Howard, upon complaint of ill health, gave up going to Europe, and they traveled for some two months in the eastern states, and finally decided to go to Washington city for the winter, to look after his means there in the hands of a claimed trustee. At Baltimore city, he changed his mind on account of an invitation from Mrs. Thomas Clark, who, with her husband, Thomas, then owned and occupied the said southeast quarter of section four (4),

town six (6), range seventeen (17), all in said Atchison county, Kansas, who was then in ill health, and had great confidence in the ability of said Howard (who is a skilled physician and surgeon) to cure her, and started with said Salome C. Howard to visit said Clarks.

"6. The defendant and her said husband reached said Clarks' in October or November, 1881, and took up their residence in the Clark family. At this time there was between $10,000 and $11,000 of the said money still in the hands of the defendant, Salome C. Howard, and the balance spent. From time to time the Clark farm was improved out of this money, and other of this money loaned to said Thomas Clark, and the families continued to live together.

"7. The defendant had insisted that they should have a farm home, and that her money should be used for that purpose, and meanwhile consented that her husband should use the money to the best advantage, until the opportunity for putting the same into a farm should arrive, and that during this time the money should be held and treated as money, and the title to the farm when acquired taken in her name, and she had reason to and did believe, until the death of her husband, that this was done.

"8. In January, 1883, Mrs. Thomas Clark had died, and Thomas Clark had a settlement with W. H. M. Howard of the farm affairs growing out of the advancement to Clark of the money of Salome C. Howard, and then gave him a note for $4,000 and a mortgage dated January 22, 1883, on the said two tracts of land to secure the same, the second half-quarter tract being already under mortgage to A. J. Grover. This mortgage misdescribed the 160-acre tract, and by action in this court said mortgage was reformed in this respect; and later, said Thomas Clark having intermarried with Rondolia C., they together executed and delivered to said W. H. M. Howard a deed, of date November 15, 1883, for the said two tracts of land, the consideration for each said mortgage and deed being advanced out of the said funds of defendant, Salome C. Howard, and it being her desire and understanding at the time that each had been given her in her own name, and such mortgage decree of court and deed were duly recorded shortly after their respective dates.

"9. Shortly before September 23, 1884, said Thomas Clark and wife separated, said Rondolia leaving the farm, and the defendant has since resided thereon as her homestead.

"10. Said action No. 4020 was commenced for the purpose, on the part of said Rondolia C. Clark and Thomas Clark, of setting aside the said deed, and during the pendency of which said Thomas Clark died, leaving Rondolia C. his widow and sole heir at law; and afterward, on February 23, 1888, the defendant compromised said action, paying said Rondolia C. $500, and she executed a release deed and transfer, of date February 20, 1888, of all interest in and to all property the subject of such suit, said settlement being in pursuance of stipulation between said Rondolia C. Clark and said Salome C. Howard, filed in said action March 5, 1888.

"11. The defendant, in November, 1884, upon the information that her husband had left a daughter by a former marriage living with her mother somewhere in New England, and believing that her husband had left large wealth which was covered up in the hands of trustees, went east for the purpose of finding the plaintiff, and seeing what could be done toward unearthing her late husband's wealth, and found the plaintiff, then a minor, living with her mother, then again married, in the city of Boston, but was unable to get any trace of any hidden estates or other means as having belonged to her late husband, or to induce the plaintiff's friends to join with her in an effort to that end; and all the evidence shows that at no time during his marriage with the defendant did said W. H. M. Howard have any means whatever of his own, or use or control any means, except the said means of the defendant.

"12. In 1886, the mortgagee, A. J. Grover, by due proceedings in this court, foreclosed and acquired title to the said fractional half-quarter tract of land.

"13. The said quarter-section tract of said land is worth about $3,000, and is substantially all that is left to the defendant of her means so derived from her first husband's estate; and she never derived any property from or through said W. H. M. Howard, other than by the recovery in August, 1881, of the remnant of Illinois property thereto placed in his hands.

"14. After obtaining the said deed from the said Thomas Clark, said W. H. M. Howard made frequent declarations that the said farm and everything in Kansas belonged to his wife, and had been bought with her means for her, and that all his means was tied up in the hands of trustees, both principal and interest.   The defendant had unbounded confidence

in her said husband and trusted him implicitly, and believed that the Clark mortgage was in her name, and also the deed to the land, until she discovered to the contrary after her husband's death; and, after said land had been purchased from said Clark, gave to the said Howard from time to time the greater portion of what then remained of the money derived from her Illinois property, to be used in the improvement and operation of such farm. The defendant had never had any business experience; and said Howard seems to have been quite an operator, but a very extravagant and reckless man, and seems to have had the ability to secure the confidence of those he came in contact with, without profit to them; and, so far as can be ascertained from the evidence, died without any means in his own right."

And, upon the foregoing conclusions of fact, the court found and stated conclusions of law as follows:

"1. That neither of the parties to this action has any interest in the said part of fractional northwest quarter of section four (4), township six (6), range seventeen (17).

"2. That the said southeast quarter of section thirty-two (32), township five (5), range seventeen (17), was purchased by the husband of the defendant with her means, upon the agreement with her to make the title thereto in her name, and that his taking the title thereto in his name was in fraud of her rights, and does not defeat her full right to said land; and that she is entitled to the full right to said land.

"3. That in the action No. 4020 the defendant, Salome C. Howard, is entitled to a decree quieting title to said land, against her codefendant, Katharine S. Howard; and in said action No. 6523, that the plaintiff has no interest in the said described land, and is not entitled to partition thereof, and that the said defendant is entitled to a decree enjoining the said plaintiff against setting up any title to or interest in said land, with costs of suit."

Motions for additional findings, as well as to set aside those which had been made by the court, were asked and refused. Judgment in accordance with the findings of the court was then rendered. Exceptions were taken to the various rulings made by the court. Judgment for defendant, *Salome C. Howard*. The plaintiff, *Katharine S. Howard*, brings the case to this court.

*J. T. Allensworth,* for plaintiff in error.

*W. W. & W. F. Guthrie,* for defendant in error.

The opinion of the court was delivered by

JOHNSTON, J.: By the stipulation of the parties, two cases which raised substantially the same issues were merged and tried as one action. The rulings of the court upon preliminary questions in the first of these, known as the Clark case, have thereby become immaterial, and no error can be predicated thereon. The question so much argued by counsel for plaintiff as to the inconsistencies in defendant's testimony, and as to where the preponderance is, cannot be considered in this court. We cannot weigh the conflicting evidence introduced, nor go further than to examine whether that offered by defendant tends to sustain the findings and judgment of the court.

We have no hesitancy in holding that there is abundant evidence to sustain every material issue and finding in the case. It is clear that when Doctor Howard was married to the defendant, he had little, if any, property or money, and that what he has since used or invested was obtained from her. She had property and interests, derived from the estate of a former husband, amounting to about $50,000, which she intrusted to Doctor Howard for management, and the title to her real estate was conveyed to and held by him in trust for her. It is contended that the trust was not created in the manner prescribed by the Illinois statute, and hence could not be enforced, but the question of whether it is enforceable or not has become immaterial. The Illinois real estate was converted into money, which was paid to and taken possession of by Mrs. Howard as her own. It appears that there remained of the estate at that time only about $12,000 or $13,000. Several thousand dollars of this amount were never in the possession of her husband. This money was admitted by Doctor Howard to be her own. She carried it upon her person, and brought it to Kansas, where it was invested in

the real estate which is the subject of controversy in this proceeding. After the remaining portion of her property, which had been intrusted to the control and management of Doctor Howard, was converted into money and paid over to her, the trust was to that extent executed, and the statute of Illinois respecting the creation and enforcement of trusts can have no application. The testimony shows clearly enough that the money which was invested in the Clark land was obtained from the defendant. The understanding, as she testifies, was that the mortgage and deed executed by the Clarks for the money thus advanced should be executed to her, and she believed, until after Doctor Howard's death, that the land had been conveyed to her. As the whole of the consideration was paid by her and an absolute conveyance taken in the name of Doctor Howard without her consent, a trust results in her favor. (*Kennedy v. Taylor*, 20 Kas. 558; *English v. Law*, 27 id. 242; *Mosteller v. Mosteller*, 40 id. 658; *Barlow v. Barlow*, 47 id. 676; Gen. Stat. of 1889, ¶ 7166.)

1. Under Kansas statutes, a trust resulted.

The second objection is, that the findings made by the court were prepared by the attorneys for defendant. There is nothing substantial in this objection. The court first announced its decision orally, and written findings of fact and conclusions of law being desired, the attorneys for defendant, at the suggestion of the court, formulated and presented them to the court. It is not an uncommon practice for the attorneys of the respective parties to formulate such findings as they desire to have made, leaving the court to adopt them, or such of them as in its judgment have been established by the proofs. The findings presented to the court in this case were adopted by the court as its own, and the fact that they were formulated by counsel is no ground for criticism or objection.

3. Findings formulated by counsel.

It is next claimed, that the testimony of defendant should have been disregarded, as some of it concerned transactions and communications had with her deceased husband. It appears from the record that quite an extended examination

was made and history of the case given before an objection of any kind was made by the plaintiff. The objection which was made was not specific, and did not state that the objection to the communication or transaction was because the plaintiff was the heir at law of the deceased person. Objections to testimony should be distinctly pointed out, in order that the court may rule intelligently upon them, and unless this is done they are not entitled to consideration here. More than this, the plaintiff entered upon an exhaustive and detailed examination of the defendant as to her courtship with Doctor Howard, and most of the communications and transactions had between them during the continuance of their married lives were called out by the plaintiff. Under the circumstances, we think the objection now made comes too late, and that no prejudicial error was committed.

*4. Review—practice.*

The objection to the testimony of Grover cannot be sustained. The defendant was entitled to show by parol proof the facts and circumstances from which the trust resulted, notwithstanding it contradicted the terms of the conveyance or deed wrongfully made by Clark to Doctor Howard. (*Marsh v. Davis*, 33 Kas. 326.)

*2. Parol evidence—contradicting conveyance.*

The exclusion of the hearsay testimony proposed to be shown by Heath in favor of the plaintiff was not erroneous. There are other objections, but they are deemed immaterial, and require no comment.

We think the court reached a just and correct conclusion, and we find no substantial grounds for the complaints that have been made against its rulings. The judgment will be affirmed.

All the Justices concurring.