(No. 13826.—Reversed and remanded.)
MINERVA C. CRAWFORD *et al.* Appellants, *vs.* ALLEN B.
HURST, Appellee.

*Opinion filed October 22, 1921.*

1. EVIDENCE—*what testimony of husband of deceased wife is admissible in suit for partition by her heirs.* In a suit for partition by the heirs of a deceased wife, the husband, in whose name the title was held, may testify in rebuttal to certain conversations which witnesses have testified they had with him as to his wife's interest in the property sought to be partitioned, but he should not be permitted to testify directly that the land did not belong to his wife.

2. SAME—*what evidence of wife's statements out of husband's presence is not admissible in suit for partition by her heirs.* In a suit for partition by the heirs of a deceased wife against her husband on the ground that the wife was the equitable owner of the property while the title was taken in her husband's name, witnesses should not be permitted to testify that the wife, shortly before she died, said, out of her husband's presence, that she was sick and was not present when the deed was made and that she had asked that it be made in her name but that it was made in her husband's name.

3. TRUSTS—*resulting trust arises independent of agreement or intention of parties.* A resulting trust is not based upon agreement of the parties nor upon any contract and the intention of the parties to create such trust is not necessary to its existence, but the trust is raised by the law itself upon a particular established state of facts, such as where one man's money is invested in land and the conveyance is taken in the name of another.

4. SAME—*resulting trust arises where two or more parties contribute purchase price of land.* Where two or more persons together advance the purchase price of land and the title is taken in the name of one of them a trust will result in favor of the others, and all of them will take the title in equity in undivided shares in the property, proportioned to the respective shares of the purchase money furnished by them.

5. SAME—*evidence to establish resulting trust must be clear and unequivocal.* Parol evidence to establish a resulting trust must be clear, strong and unequivocal and must establish the fact of payment of the purchase money by the alleged beneficiary beyond doubt.

6. DEEDS—*no gift or advancement is presumed where wife furnishes money for property taken in husband's name.* Where there

is a legal obligation resting upon the person furnishing the consideration for a conveyance to support the person in whose name the title is taken the law infers an intention to make a gift or advancement to the person named as grantee, but where a husband takes title to land bought with his wife's money there is no presumption of a gift or advancement to him.

7. PARTITION—*prayer for general relief entitles complainants to such relief as proof establishes.* Under a prayer for general relief in a suit for partition and for the declaration of a trust the complainants should be allowed such relief as their proof establishes they are entitled to, although they may fail to establish the entire claim made in their bill.

8. LACHES—*when doctrine of laches does not apply to defeat claim of heirs of a deceased wife.* The doctrine of *laches* cannot be applied to defeat the claim of heirs of a deceased wife in a suit by them, soon after her death, for partition of property which the husband held in his name, where the evidence shows that the husband recognized the equitable title of the wife up to the time of her death, so that she was not required to institute suit to protect her interest in her lifetime.

APPEAL from the Circuit Court of Brown county; the Hon. HARRY HIGBEE, Judge, presiding.

HARTZELL, CAVANAGH, MARTIN & HARTZELL, for appellants.

JOHN F. REGAN, and WILLIAMS & WILLIAMS, for appellee.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

Appellants, Minerva C. Crawford and her husband, Henry H. Crawford, filed their bill in the circuit court of Brown county against Allen B. Hurst, appellee, and Apollos W. O'Harra, Clifton J. O'Harra, Earle W. Wood, Henry S. Walker and Jacob S. Palmer, co-partners doing business as the O'Harra Farm Mortgage Company, charging, in substance, that Stella Hurst died March 25, 1917, intestate, seized of the equitable title in fee of the southwest quarter of the southwest quarter of section 8, and the northwest quarter of the northwest quarter of section 17, in township 2, south, range 2, west of the fourth principal

meridian, in said county, leaving her surviving Minerva C. Crawford, her sister, and Allen B. Hurst, her husband, as her only heirs; that Minerva C. Crawford is the equitable owner of an undivided one-half of the premises subject to a dower interest therein of Allen B. Hurst, and that Allen B. Hurst is the equitable owner of the other undivided one-half in fee and has a dower interest in her half; that said real estate was purchased in January, 1910, of George W. and Arthur McCoy by her husband with the money of Stella Hurst and the title thereto was taken in his name; that the other defendants, composing the O'Harra Farm Mortgage Company, hold a mortgage of $6000 against said land and which is a first lien thereon. The prayer of the bill was for a declaration of trust and for partition, subject to the mortgage aforesaid. All of the defendants answered the bill and replications were filed to the answers. On a hearing the circuit court dismissed the bill for want of equity. The appeal is direct to this court.

The following facts were established by the proofs and were not disputed: On January 10, 1910, George W. McCoy and Arthur McCoy entered into a written contract with Allen B. Hurst, by which it is recited that the McCoys on that day executed a warranty deed to Hurst to said premises for the consideration of $10,400, $600 of which was paid in cash and $1000 was to be evidenced by a note which was attached to the contract and signed by Hurst and his wife, Stella, payable on or before March 6, 1910. It was further provided by the contract that said note and the further sum of $8800 were to be paid at the Brown County State Bank on or before March 6, 1910, and in case said payments were not made as agreed, the $600 cash payment was to be retained as liquidated damages for failure to complete the purchase, but in case the payments were made, then the Brown County State Bank was to deliver to Hurst the warranty deed aforesaid, which had been executed on the date of the contract. On September 20, 1909, Stella and

Allen B. Hurst sold to John Bowman a certain other tract of land for $9500 which belonged to Stella. On March 1, 1910, she deposited $9400 of this latter purchase money in the First National Bank of Mount Sterling. On March 5, 1910, she drew a check on said bank for the sum of $9400 in favor of her husband, Allen B. Hurst, and on the same day, March 5, 1910, he paid the remainder of the purchase money to the McCoys, $9800, and received a warranty deed to the premises, which was recorded April 4, 1910. On March 20, 1916, Hurst and his wife executed and delivered the $6000 mortgage aforesaid to the O'Harra Farm Mortgage Company, and it is still a valid lien on the premises. Stella Hurst died intestate March 25, 1917, leaving no children or descendants of children, but leaving her sister, Minerva C. Crawford, and her husband, as her only heirs.

The original bill charged that Allen B. Hurst had been in possession of said land since the death of his wife and that he is chargeable with annual rent amounting to $500. The answer of Hurst charges that since the date of the warranty deed to him he has been in possession of the land, has used and occupied the same, has collected all rents and profits and has paid all taxes thereon, with full knowledge and consent of Stella Hurst. There is no proof in the record as to the occupancy of the land, collection of rents or payment of taxes. It was proved by the two McCoys that Hurst told them that his wife had money and they wanted to put it in land, and that his wife's money was buying the land in question. Arthur McCoy testified positively that Hurst told him it was his wife's money that was going into the land,—"the money out of the land of Bowman,"—John L. Bowman. It was proven by two other witnesses that previous to his wife's death Hurst told them that the land belonged to his wife and that she did not want to sell it. He also gave to them as a reason why he did not want to have a graveyard fenced on the place, that

the land belonged to his wife and that she did not want it fenced. Hurst in his testimony denied telling the McCoys that his wife's money went into the purchase of the land and denied saying to the other two witnesses that his wife owned the land. He admitted, however, that he had a conversation with the latter two witnesses about fencing the graveyard. His testimony in denial of these facts was competent. He also testified that the land did not belong to his wife, and this testimony is objected to on the ground that he was an incompetent witness against the appellants. This latter evidence was clearly incompetent. Some of the witnesses testified for appellants that Hurst's wife, out of his presence, said that she was sick and was not present when the deed to the land was made, and that she had asked that the deed be made in her name when the place was bought but that it was made in her husband's name, and that these statements were made shortly before she died. This testimony was also incompetent. The testimony of George W. McCoy was to the effect that he did not know Stella Hurst, but thought that Hurst's wife was present when the deed was made but was not certain. The foregoing is the sum and substance of all of the testimony bearing upon the issues in this case.

We think the evidence in the record shows, beyond a reasonable doubt, that at least $9400 of the purchase money for the land in question was money furnished by Stella Hurst, wife of Allen B. Hurst. There is no competent evidence in the record as to what the understanding was on Mrs. Hurst's part as to whom the deed was to be made. There is no proof of any understanding between Hurst and his wife that the deed was to be made to him. The evidence does positively show that the contract for the land with the McCoys was made by them with Allen B. Hurst, and that on the day the contract and deed were drawn there was not one word said between them or to the scrivener as to whom the land should be conveyed. The well settled rule

of law in this State is, that the intention of the parties to create a resulting trust is not necessary to its existence. Such a trust results from the fact that one man's money has been invested in land and the conveyance taken in the name of another. So, also, where two or more persons together advance the purchase price and the title is taken in the name of one of them a trust will result in favor of the others, and all of them will take the title in equity in undivided shares in the property, proportioned to their respective shares of the purchase money furnished by them. A resulting trust, as the term implies, is not based upon agreement of the parties but is independent of any contract, and is raised by the law itself upon a particular established state of facts. (*Baughman* v. *Baughman*, 283 Ill. 55; *Katzing* v. *Wiegand*, 286 id. 646.) All the cases in this jurisdiction also hold that parol evidence to establish a resulting trust must be clear, strong and unequivocal, and must establish the fact of payment of the purchase money by the alleged beneficiary beyond doubt. .

Where a husband takes title to land bought with his wife's money there is no presumption of a gift or advancement to him, as there is no legal obligation on the part of the wife to support him. In such case it is not necessary, in order to establish a resulting trust in favor of the wife, to show an intention by the parties to create a trust at the time of the transaction. Where there is a legal obligation resting upon the person furnishing the consideration to support the person in whose name the conveyance is taken the law infers an intention to make a gift or advancement to the person named as grantee, and in order to establish a resulting trust in favor of the person furnishing the consideration there must be circumstances attending the transaction which negative the inference of a gift or advancement. (*Wright* v. *Wright*, 242 Ill. 71.) There is no presumption arising on the evidence in this record in favor of Allen B. Hurst or against appellant Minerva C. Craw-

ford.  We have in this record, in substance, the simple state of facts that Hurst bought the land and took title to himself and paid therefor at least $9400 of his wife's money and afterwards stated that the land belonged to his wife. Under our holding in *Wright* v. *Wright, supra,* there was a resulting trust in favor of the wife for at least 94/104ths or 47/52ds of the land in question.  Under the evidence in this record we are not satisfied to hold that the evidence establishes by the degree of proof required that the wife furnished the entire purchase money, although there is evidence in the record tending to prove that fact.

Under the bill and proofs in this case we think that the appellants' were entitled to a decree declaring that the appellee holds 47/52ds of the land in trust for his wife's heirs subject to the mortgage aforesaid, and that they were also entitled to a decree for partition, although by their bill and proofs they sought to show that appellee held all of the land in trust.  The bill contains a general prayer for relief, and under such a prayer appellants should be allowed such relief as their proof establishes they are entitled to, although they may fail to make good all their claim in their bill.  *Hinshaw* v. *Russell,* 280 Ill. 235; *Walker* v. *Converse,* 148 id. 622.

We have considered the question of *laches* raised by appellee and do not think that doctrine applies to this case. The husband was not making any claim against his wife in her lifetime, but, on the contrary, the evidence shows that he recognized her title up to the time of her death. She was not, therefore, required at her peril to institute suit to protect her interest in her lifetime.  *Wright* v. *Wright, supra.*

For the reasons aforesaid the decree of the circuit court will be reversed and the cause remanded for a rehearing of the entire case, with leave to both parties to introduce further evidence if they be so advised.

*Reversed and remanded.*